# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GUADALUPE MENDOZA,<br><br>    Petitioner,<br><br>v.<br><br>PATRICK COVELLO, Acting Warden of Mule Creek State Prison,<br><br>    Respondent. | Case No.: 1:19-cv-01521-NONE-JLT (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>[THIRTY-DAY OBJECTION DEADLINE] |

In 2015, Petitioner used a firearm to kidnap and rob patrons at a gas station. After a jury found him guilty of various related crimes, he received a life-without-parole prison term. As discussed below, the Court finds the Petitioner's claim to be without merit and recommends the petition be **DENIED**.

## I.    PROCEDURAL HISTORY

In an information filed March 13, 2015, Petitioner was charged with kidnapping to commit robbery (count 1; Pen. Code, § 209, subd. (b)); second degree burglary (count 2; § 460, subd. (b)); second degree robbery of Eulisses Mercado (count 3; § 212.5, subd. (c)); second degree robbery of Olivero Arvizu (count 4; § 212.5, subd. (c)); first degree robbery of Eulisses Mercado (count 5; § 212.5, subd. (b)); and attempted second degree robbery of Olivero Arvizu (count 6; §§ 664, 212.5, subd. (b).) People v. Mendoza, No. F073360, 2018 Cal. App. Unpub. LEXIS 7232, at *1 (Oct. 23, 2018). The information alleged Petitioner personally used a firearm during the commission of all

1

counts. (§ 12022.5, subd. (a).) Id. Finally, the information alleged Petitioner personally used a firearm during the commission of the kidnapping to commit robbery within the meaning of section 12022.53, subdivision (b). Id. The jury convicted Petitioner on all counts (except count 3, previously dismissed) and found true all allegations except the section 12022.53, subdivision (b) allegation attached to count 5. Id. at *1-2. The court sentenced Petitioner to life with the possibility of parole on count 1, plus 10 years for the section 12022.53, subdivision (b) enhancement. Id. at *2. On count 4, Petitioner was sentenced to a consecutive term of three years, plus 10 years for the section 12022.53, subdivision (b) enhancement. Id. On count 6, Petitioner was sentenced to a consecutive term of 8 months, plus three years four months for the section 12022.53, subdivision (b) enhancement. Id. The sentences on counts 2 and 5, and their enhancements, were stayed pursuant to section 654. Id.

The California Court of Appeal, Fifth Appellate District ("Fifth DCA") affirmed Petitioner's convictions. Id. at *10. Additionally, on agreement of the parties, the matter was remanded for the trial court to consider whether or not to strike the firearm enhancements under sections 12022.5 and 12022.53 pursuant to Senate Bill No. 620 (2017-2018, Reg. Sess., S.B. 620, Stats. 2017, ch. 682.) and to correct the abstract of judgment to accurately reflect Petitioner's sentence on the 12022.5, subdivision (a) enhancement (if not stricken). Id. at *10-11.

On October 16, 2019, Petitioner filed the instant federal petition for writ of habeas corpus. (Doc. 1.) Respondent filed a motion to dismiss the petition on February 7, 2020. (Doc. 15.) The Court granted the motion to dismiss in part and provided Petitioner with the opportunity to elect to withdraw his unexhausted Equal Protection claim and proceed solely on his exhausted due process claim or seek a stay and abeyance of this action so that he may exhaust his unexhausted Equal Protection claim in state court. (Doc. 18.) On January 29, 2021, Petitioner filed a notice electing to withdraw his unexhausted Equal Protection claim and proceed solely on his exhausted due process claim. (Doc. 19.) In response to an order by this Court, the Respondent filed an answer on April 8, 2021. (Doc. 24.)

///
///
///
///

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

Shortly before 9:14 p.m. on January 13, 2015, an incident occurred a gas station on Panama Lane in Kern County. Eulisses Mercado pulled up to the pump closest to the street and farthest from the station's convenience store. Mercado saw a white El Camino pull up "really slow." An individual - later identified as defendant - exited the driver's side of the El Camino. The passenger - who defendant later identified as Miguel Aguilar - got out and went in to the driver's side of the El Camino. Defendant walked toward Mercado until he was only about one foot away. Defendant was concealing a gun under his jacket. He said, "'Look, I don't want to do anything stupid, I don't want to do anything crazy, but I really need money.'" Defendant then displayed the gun and then put it away. Mercado told defendant that he also did not have much money. Defendant said he was going through a "'situation'" and needed money. Mercado gave him $20. Defendant said, "'Well, you gotta have more in your ATM'" or "'in your debit card.'" Mercado tried to tell him he did not have much money, but defendant said, "'Then let's go in [*sic*] the ATM. Let's check.'" Mercado testified that he went into the store because he was afraid.

Mercado initially tried to get $60 out of the ATM, but there were insufficient funds. So, Mercado withdrew $40 and handed them to defendant. Defendant said, "'Come on'" and gestured for Mercado to follow him out of the store. Mercado told defendant to go without him, because Mercado was going to get a food order he had placed before the incident. Defendant walked away, and Mercado went to a nearby taco truck in the parking lot. Some women at the taco truck encouraged Mercado to call the police, which he did. As Mercado was talking with these women, he saw defendant approach another vehicle.

Romero Arvizu had come to buy tacos at the taco truck. After purchasing his tacos, he spoke with a friend for more than half an hour. As he returned to his truck, he saw a white El Camino. Someone - later identified as defendant - began approaching him from the El Camino and told Arvizu to roll down his window. According to Arvizu, defendant "pulled out" a gun and said, "'Give me all your money or I'll shoot all your truck [*sic*].'" Arvizu told defendant he spent all his money on tacos. Arvizu told defendant, "'I have the ATM [*sic*].'" Defendant told Arvizu to "go get money," but Arvizu responded that the ATM was not working. Defendant responded that he was sure the ATM worked. Arvizu told defendant he would bring him back $100. Defendant took Arvizu's keys and did not allow him to roll up the truck's window. Once inside the convenience store, the attendant told Arvizu not to withdraw money and that police were on the way.

Police officers located defendant behind a restaurant adjacent to the gas station. Behind the restaurant, near a dumpster, Officer Herron located a loaded .38-caliber revolver and Arvizu's keys. Defendant had three $20 bills in his pocket.

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will adopt the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

3

> Defendant testified offering a different version of events. Defendant claimed Mendoza gave him money willingly to facilitate a drug sale, and that he never even spoke to Arvizu.

People v. Mendoza, 2018 Cal. App. Unpub. LEXIS 7232, at *2-5.

### III. DISCUSSION

#### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

#### B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

4

Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for

harmlessness).

    C.     Review of Petition

          1.     Sufficiency of the Evidence

Based on Jackson v. Virginia, 443 U.S. 307 (1979), Petitioner claims that there is not sufficient evidence to support his kidnapping-for-robbery conviction. (Doc. 1 at 19-22.) In the last reasoned decision, the Fifth DCA denied the claim as follows:

> Defendant was convicted of kidnapping to commit robbery. That crime occurs when someone "kidnaps or carries away any individual to commit robbery" (§ 209, subd. (b)(1)) and "the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in," the robbery. (§ 209, subd. (b)(2).) However, the increased harm need not be substantial. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 979, 146 Cal. Rptr. 3d 66.) Defendant argues there was insufficient evidence showing the movement of the victim was beyond that merely incidental to the robbery and that the movement increased the risk of harm to the victim.
>
> When a defendant challenges a judgment for insufficiency of the evidence, we """"must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - that is, evidence which is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."""' [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 294, 128 Cal. Rptr. 3d 417, 256 P.3d 543.) "'We presume '"in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] This standard applies whether direct of circumstantial evidence is involved." [Citation.]' [Citation.]" (*Ibid.*)
>
> Kidnapping to commit robbery will always involve a kidnapping that is incidental to the robbery. Otherwise, it would not be a kidnapping "*to* commit robbery." (§ 209, subd. (b)(1), italics added.) Subdivision (b)(2) only requires that the kidnapping not be *merely* incidental to the robbery. (§ 209, subd. (b)(2).)
>
> Defendant contends that Mercado's movement was "necessary to complete the robbery." But the fact that a kidnapping is "necessary" to complete a robbery does not remove it from the scope of section 209. To the contrary, in order for a kidnapping to become a kidnapping "*to* commit robbery" (§ 209, subd. (b)(1), italics added), the kidnapping *must* be committed in furtherance of the robbery.
>
> Section 209, subdivision (b)(2) excludes kidnappings that are *merely* incidental to the robbery. Read together, subdivisions (b)(1) and (b)(2) *require* that the kidnapping be incidental to the robbery (§ 209, subd. (b)(1)), but not *merely* incidental to the robbery (§ 209, subd. (b)(2).) Consequently, the fact that a kidnapping is incidental to a robbery is a necessary (though not sufficient) condition for a conviction under section 209. In other words, the fact that a kidnapping is incidental to the robbery strengthens the

> prosecution's case, it does not weaken it.
>
> Of course, the fact the kidnapping was incidental to the robbery is not enough. The kidnapping must also increase the risk of harm to the victim. Defendant argues there was no substantial evidence the kidnapping increased the risk of harm because it did not reduce the victim's ability to escape, decrease the likelihood of detection, or elevate the risk of serious injury or death. However, the jury could have reasonably concluded that moving from outdoors - where Mercado could have fled in any of several directions - into the convenience store "reduc[ed] the prospects of ... escape." (*People v. James* (2007) 148 Cal.App.4th 446, 457, 55 Cal. Rptr. 3d 767, fn. omitted.) Moreover, movement from an open area to a less open area can substantially decrease the possibility of detection or rescue. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1153, 47 Cal. Rptr. 3d 575, 140 P.3d 866.)

People v. Mendoza, 2018 Cal. App. Unpub. LEXIS 7232, at *5-7.

### a. Legal Standard

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307 (1979), the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In <u>Cavazos v. Smith</u>, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that <u>Jackson,</u>

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

<u>Id</u>. at 2.

   *b.*  *Analysis*

Viewing the evidence in the light most favorable to the prosecution, the state court's determination that there was sufficient evidence was not unreasonable. As set out by Respondent, the offense at issue is kidnapping to commit robbery, per Cal. Penal Code § 209(b)(1)-(2), and the elements of that offense are: (1) the defendant intended to commit robbery; (2) acting with that intent, the defendant took, held, or detained another person by using force or by instilling a reasonable fear; (3) using that force or fear, the defendant made the other person move a substantial distance; (4) the other person was made to move a distance beyond that merely incidental to the commission of a robbery; (5) when that movement began, the defendant already intended to commit robbery; and (6) the other person did not consent to the movement. (Doc. 24 at 12-13, citing CALCRIM No. 1203.) Petitioner's challenge concerns elements (3) and (4).

As to element (3), Petitioner challenges the conclusion that sufficient evidence supports the jury's decision that his movement of Mercado increased the risk of harm to Mercado, in a way that would satisfy the "substantial distance" test. See <u>People v. Mendoza</u>, 2018 Cal. App. Unpub. LEXIS 7232, at *5-6. The Fifth DCA discussed that the kidnapping must increase the risk of harm to the victim, and from moving from outdoors, an open area, where Mercado could have fled in any of several directions into the convenience store, a less open area, reduced the prospects of escape and substantially decreased the possibility of detection or rescue. <u>Id</u>. at *7. As Respondent contends, a fairminded jurist could agree that Petitioner's act of moving Mercado from the outdoors into the

8

convenience store reduced Mercado's prospects of escape, detection, and/or rescue, and thereby increased the risk of harm to Mercado. (Doc. 24 at 13.)

As to element (4), Petitioner challenges the conclusion that sufficient evidence supports the jury's decision that his movement of Mercado was "beyond that merely incidental to" his commission of the robbery. See People v. Mendoza, 2018 Cal. App. Unpub. LEXIS 7232, at *5-7. However, as Respondent argues, this conclusion was not objectively unreasonable. (Doc. 24 at 13.) Petitioner's argument rested on the theory that if the movement of the victim was "necessary to complete the robbery," then the movement was "merely incidental" to the robbery (see ECF 14-5 at 25-26), but the Fifth DCA rejected this theory as legally incorrect: establishing that the movement of the victim was necessary to complete the robbery establishes only that the movement was incidental to the robbery, not that it was merely incidental to the robbery. People v. Mendoza, 2018 Cal. App. Unpub. LEXIS 7232, at *6-7. The Fifth DCA found that the fact that a kidnapping was incidental to the robbery strengthened the prosecution's case. Id. at *7.

The Fifth DCA reasonably concluded that there was sufficient evidence to support Petitioner's conviction of kidnapping to commit robbery. Petitioner fails to show that no fair-minded jurist would agree with the state court's determination. Petitioner fails to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, the Jackson standard, and the claim should be denied.

## IV.    RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty days after being served with a copy of this Findings and Recommendation, Petitioner may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Petitioner is advised that failure to file objections within the

specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated: **May 12, 2021**            **/s/ Jennifer L. Thurston**
                                            CHIEF UNITED STATES MAGISTRATE JUDGE